# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>SIMON SAEID KOLI (1),<br><br>                 Defendant. | CASE NO. 12-CR-403-IEG<br><br>**ORDER GRANTING RESTITUTION** |

On February 13, 2013, the Court held a restitution hearing to determine the amount of restitution owed by Defendant Simon Saeid Koli ("Defendant"). For the following reasons, the Court **ORDERS** restitution in the amount of $256,627.78 to Barclay's c/o 608 Deutsche Bank NTL TRST CO ("Deutsche Bank"), $246,795.34 to Bank of America c/o Country Home Loans ("Countrywide"), $253,029.11 to Barclay's c/o 440 PMTG STTN Subprime ("PMTG"), and $426,895.03 to Morgan Stanley c/o Saxon Mortgage Services ("Saxon").

## BACKGROUND

Defendant and one co-defendant, Kian Ashkanizadeh ("co-defendant"), were indicted on February 2, 2012. [Doc. No. 1.] Defendant and co-defendant obtained fraudulent loans on four properties: 1560 Triton Street ("1560 Triton"); 1564 Triton Street ("1564 Triton"); 1584 Triton Street ("1584 Triton"); and 1572 Triton Street. [Doc. No. 101, Govt.'s Opp. at 4-9.] Defendant ultimately pleaded guilty to count one of the indictment for conspiracy to commit mail fraud, wire fraud, and

12cr403

money laundering, pursuant to a plea agreement.  [Doc. No. 110, <u>Judgment</u> at 1; Doc. No. 148, <u>Amended Judgment</u> at 1.]  On December 3, 2012, the Court sentenced Defendant to 30 months custody and ordered that he pay restitution, the amount of which to be determined at a later date.  [<u>Id.</u> at 1-2.]  The Court held a restitution hearing on February 13, 2013.

<strong><u>DISCUSSION</u></strong>

## I.    Restitution

The Government requests that the Court order:  "(1) restitution to Bank of America c/o Country Home Loans in the amount of $258,281.92; to Barclay's c/o 608 Deutsche Bank NTL TRST CO in the amount of $256,627.78; to Barclay's c/o 440 PMTG STTN Subprime in the amount of $253,029.11; and to Morgan Stanley c/o Saxon Mortgage Services in the amount of $427,895.03; and (2) that defendant Koli be held jointly and severally liable to pay restitution with co-defendant and co-conspirator Ashkanizadeh for the same losses."  [Doc. No. 101, <u>Sentencing Memo.</u> at 21.]

Defendant under the plea agreement agreed to make mandatory restitution to the victims of the offense in an amount to be determined by the Court.  [Doc. No. 85, <u>Plea Agreement</u> at 12; Doc. No. 138, <u>Def.'s Opp.</u> at 2.]  Defendant "objects to the alleged losses sought by the Government to be ordered repaid as part of restitution, due in large part to the failure of the Government to meet its burden in proving the appropriate amount of restitution to be ordered and also since the lenders themselves . . . were a cause of their own loss . . . ."  [<u>Id.</u>]  Defendant argues that the Government has provided "minimal foundation" for the losses alleged by the lenders.  [<u>Id.</u>]  Defendant requests that the Court offset any alleged loss with any gains, losses attributable to market forces, and causes unrelated to Defendant and the co-defendant.  [<u>Id.</u> at 2-3.]

### A.    Victims

The MVRA requires a court to order restitution to each victim of an offense.

- 2 -

1   A victim is broadly defined as:

2       A person directly and proximately harmed as a result of the commission
        of an offense for which restitution may be ordered including, in the case
3       of an offense that involves as an element a scheme, conspiracy, or pattern
        of criminal activity, any person directly harmed by the defendant's
4       criminal conduct in the course of the scheme, conspiracy, or pattern.

5   18 U.S.C. § 3663A(a)(2); see United States v. Gordon, 393 F.3d 1044, 1048 (9th

6   Cir. 2004).  The Government bears the burden of proving that a person or entity is a

7   victim for purposes of restitution.  United States v. Wakine, 543 F.3d 546, 556 (9th

8   Cir. 2008).

9       New Century Mortgage Corporation ("New Century") originally made the

10  loans on all of the properties at issue.  New Century subsequently sold the loans on

11  the secondary market.  [Gov't.'s Ex. 1, KOLI-RESTITUTION-3; Doc. No. 101-1,

12  Gov't.'s Mot. at 5.]  The victims in this case are readily identifiable as they are the

13  purchasers of the loans from New Century:  Countrywide, Deutsche Bank, PMTG,

14  and Saxon.

15      **B.    Amount of Restitution**

16      The Court must "order restitution to each victim in the full amount of each

17  victim's losses as determined by the court and without consideration of the

18  economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A).  "Restitution

19  may compensate victims only for actual losses caused by the defendant's criminal

20  conduct."  United States v. Peterson, 538 F.3d 1064, 1075 (9th Cir. 2008) (internal

21  quotation omitted).  "A district court may not order restitution such that victims will

22  receive an amount greater than their actual losses."  United States v. Rizk, 660 F.3d

23  1125, 1137 (9th Cir. 2011).

24      "[I]n the case of an offense resulting in damage to or loss of a victim's

25  property, the victim is entitled to return of the property, § 3663A(b)(1)(A), or if the

26  return of the property is 'impossible, impracticable, or inadequate,' the victim is

27  entitled to the value of the property less 'the value (as of the date the property is

28  returned) of any part of the property that is returned,' § 3663A(b)(1)(B)."  United

1  States v. Yeung, 672 F.3d 594, 601 (9th Cir. 2012).

2    The Government bears the burden of proving the amount of the loss by a

3  preponderance of the evidence.  18 U.S.C. § 3664(e); see Wakine, 543 F.3d at 556.

4  A dispute as to the proper amount of restitution must be resolved by the district

5  court by a preponderance of the evidence.  18 U.S.C. § 3664(e); see Wakine, 543

6  F.3d at 556.  "[T]he district court [may] utilize only evidence that possesses

7  sufficient indicia of reliability to support its probable accuracy."  Id. at 557 (quoting

8  United States v. Garcia-Sanchez, 189 F.3d 1143, 1148-49 (9th Cir. 1999)) (internal

9  quotation omitted).  The Federal Rules of Evidence do not apply to sentencing

10  hearings, including restitution hearings.  Yeung, 672 F.3d at 606; see also United

11  States v. Littlesun, 444 F.3d 1196, 1199 (9th Cir. 2006).

12    In Yeung, the Ninth Circuit developed guidelines for calculating restitution

13  where the victim is a loan purchaser.  "To calculate a victim's restitution award

14  using the outstanding principal balance of the loan, if the victim only paid a fraction

15  of that amount to obtain the loan on the secondary market, would cause the victim to

16  receive an amount exceeding its actual losses. . . . Awarding such an amount would

17  constitute plain error."  Yeung, 672 F.3d at 602.  "Therefore, a district court

18  calculating the loss suffered by a victim who purchased a fraudulent loan may begin

19  by determining how much the victim paid for the fraudulent loan (or the value of the

20  loan when the victim acquired it), less the value of the real property collateral as of

21  the date the victim took control of the collateral property."  Id.; see also United

22  States v. Smith, 944 F.2d 618, 624-25 (9th Cir. 1991).

23    The "lender generally takes control on the date the lender either (1) receives

24  the net proceeds from the sale of the collateral to a third party at the foreclosure

25  sale, . . . or (2) takes title to the real estate collateral at the foreclosure sale, at which

26  time 'the new owner had the power to dispose of the property and receive

27  compensation. . . .'"  Yeung, 672 F.3d at 602 (quoting Smith, 944 F.2d at 625)

28  (internal citations omitted).

12cr403

"As in a case with an original lender, the district court may consider other relevant factors that may increase or decrease the amount of the loan purchaser's loss" such as prejudgment interest, interest still due on the loan, and expenses associated with holding the real estate collateral that were incurred by the lender before it took title to the property.   Yeung, 672 F.3d at 601-02.

Although there were four properties involved in this case, the Government stated at the restitution hearing that losses were only sustained on three of the four: 1560 Triton, 1584 Triton, and 1564 Triton.

### 1.   1560 Triton

New Century originally made two loans on 1560 Triton on December 28, 2006.  [Govt. Ex. 1, KOLI-RESTITUTION-3.]  The first loan, in the amount of $992,000, was subsequently sold to Deutsche Bank for $1,010,627.78 on February 28, 2007.  [Id.; Doc. No. 101-1, Ex. B at 5.]  The second loan, in the amount of $248,000, was subsequently sold to Countrywide for $251,795.34 on February 28, 2007.  [Id.; Govt. Ex. 1, KOLI-RESTITUTION-3.]  Aaron Rich, a forensic accountant employed by the Federal Bureau of Investigation, testified during the restitution hearing that Deutsche Bank subsequently allowed the owner of 1560 Triton to sell it at a short sale.  Deutshe Bank received a payoff of $754,000, and Countrywide received $5,000.  [Govt. Ex. 1, KOLI-RESTITUTION-5-6.]

Defendant testified that he resided at this property after making improvements to it.  [Def.'s Ex. B.]  Defendant also stated that he made payments to New Century totaling $7,128.87 on the first loan and $2,558.87 on the second loan.  [Def. Ex. A.]

The Court uses the Yeung framework to determine the amount of loss suffered by each loan purchaser.  First, the Court begins with the amount each purchaser paid for the loan.  The Court then subtracts the value of the real property collateral as of the date the purchaser took control of the collateral property. See Yeung, 672 F.3d at 602.  Yeung, in the context of foreclosure sales, states that a lender takes control on the date it receives the net proceeds from the sale of the

12cr403

1   collateral to a third party at the foreclosure sale.  <u>Id.</u> at 601-02.  Here, the lenders

2   received proceeds from the sale of the collateral to a third party at a short sale,

3   which is the date they took control of the collateral property.  Nothing in

4   <u>Yeung</u> suggests that its framework is only limited to the foreclosure sale context.

5   Accordingly, the Court proceeds with this framework to determine the loss in the

6   instant case.

7       Deutsche Bank purchased the first loan for $1,010,627.78, and received a

8   payoff from the short sale of $754,000.  Therefore, its loss is $256,627.78.

9   Countrywide purchased the second loan for $251,795.34, and received a payoff of

10  $5,000.  Consequently, Countrywide's loss is $246,795.34.

11      The Government contends that Countrywide incurred $11,486.58 in

12  miscellaneous expenses and fees related to the second loan on 1560 Triton.  The

13  Government attaches a Bank of America Home Loans history for the loan.  [Govt.

14  Ex. 1, KOLI-RESTITUTION-33.]  However, the Government provides no

15  explanation of the loan history document and the expenses and fees.  For example,

16  the Government does not explain what the expenses and fees were and does not

17  state when they were paid, or to whom.  Because the burden is on the Government

18  to prove the amount of the loss, 18 U.S.C. § 3664(e), the Court declines to increase

19  the restitution amount by the alleged amount of miscellaneous expenses and fees.

20      Furthermore, the Court declines to credit Defendant's mortgage payments and

21  improvements to reduce the restitution amount.  As Defendant made mortgage

22  payments to New Century, rather than to the loan purchasers, the Court does not

23  credit these payments when calculating the loss to the loan purchasers.

24  Additionally, although Defendant did improve 1560 Triton, the proceeds to fund the

25  improvements were obtained from the fraudulent loans.  Therefore, the Court does

26  not offset the restitution amount by the value of the improvements.

27      Accordingly, the loss amount for purposes of restitution to Deutsche Bank is

28  $256,627.78.  The loss to Countrywide is $246,795.34.

12cr403

### 2. 1584 Triton

New Century originally made two loans on 1584 Triton on February 1, 2007. [Govt. Ex. 1, KOLI-RESTITUTION-3.]  The first loan, in the amount of $984,000, was subsequently sold to PMTG for $973,495.80.  [Id.; Doc. No. 101-1, Ex. B at 5.] The second loan, in the amount of $184,500, was subsequently sold to Saxon for $151,714.35.  [Id.; Govt. Ex. 1, KOLI-RESTITUTION-3.]  1584 Triton was subsequently sold at a short sale.  PMTG received a payoff of $720,466.69 and Saxon received $5,000.[1]  [Govt. Ex. 1, KOLI-RESTITUTION-15, 16, 17, 19, 21, 22.]

As outlined above, the Court uses the Yeung framework to determine the loss to the loan purchasers.  PMTG purchased the first loan for $973,495.80, and obtained $720,466.69 from the short sale.  Therefore, its loss is $253,029.11.  Saxon purchased the second loan for $151,714.35 and obtained $5,000 from the short sale. Accordingly, Saxon's loss on 1584 Triton is $146,714.35.

### 3. 1564 Triton

New Century originally made two loans on 1564 Triton, the first for $984,000 and the second for $246,000 on February 6, 2007.  [Govt. Ex. 1, KOLI-RESTITUTION-3.]  Both loans were sold to Saxon for $809,143.20 and $202,285.80, respectively, on March 30, 2007.  [Id.; Doc. No. 101-1, Ex. B at 5.] This property was subsequently sold at a short sale.  Saxon received payoffs of

---

[1] The Government in its chart summarizing the losses to the secondary purchasers states that Saxon received a $4,000 payoff.  [Doc. No. 101-1, Govt.'s Opp. at 5.]  However, most of the documents in Government Exhibit 1 show that Saxon received a $5,000 payoff.  [Govt. Ex. 1, KOLI-RESTITUTION-15, 16, 22.]  The Department of Housing and Urban Development Settlement Statement ("Statement") states that the payoff to Saxon was $4,000 under the "Summary of Seller's Transactions" column.  Under the "Summary of Borrower's Transactions" column, the Statement states that the payoff to Saxon Mortgage was $1,000.  [Id., KOLI-RESTITUTION-17.]  In addition, the attachment to RESPA shows that the "[b]uyer [c]ontribution to Saxon Short Payoff" was $1,000, in addition to $4,000 of "Payoff Charges For Saxon."  [Id., KOLI-RESTITUTION-19.]  Therefore, the documents submitted by the Government show that Saxon received $5,000 in proceeds from the short sale.

1  $692,288.70 for the first loan,[2] and $38,959.62 for the second loan.  [Govt. Ex. 1,

2  KOLI-RESTITUTION-26, 28.]

3          Under the Yeung framework, Saxon's loss on the first loan is $116,854.50 as

4  it bought the loan for $809,143.20 and received a $692,288.70 payoff from the short

5  sale.  Saxon purchased the second loan for $202,285.80 and obtained a payoff of

6  $38,959.62 from the short sale.  Therefore, its loss on the second loan is

7  $163,326.18.

8                                    **CONCLUSION**

9          For the reasons above, it is **ORDERED** that Defendant pay restitution to

10  Bank of America c/o Country Home Loans in the amount of $246,795.34; to

11  Barclay's c/o 608 Deutsche Bank NTL TRST CO in the amount of $256,627.78; to

12  Barclay's c/o 440 PMTG STTN Subprime in the amount of $253,029.11; and to

13  Morgan Stanley c/o Saxon Mortgage Services in the amount of $426,895.03

14  through the Clerk, U.S. District Court.  Payment of restitution shall be forthwith.

15  During Defendant's incarceration, Defendant shall pay restitution through the

16  Inmate Responsibility Program at the rate of 50% of Defendant's income, or $25.00

17  per quarter, whichever is greater.  Defendant shall pay the restitution during his

18  supervised release at the rate of $250 per month.  These payment schedules do not

19  foreclose the United States from exercising all legal actions, remedies, and

20  processes available to collect the restitution judgment.

21  / / /

22  / / /

23  / / /

24

25          [2] The Check Register and Fidelity National Title wire information in Government Exhibit 1
26  show that $692,288.67 was paid to Saxon on the first loan.  [Govt. Ex. 1, KOLI-RESTITUTION-29,
    30.] However, other documents in Government Exhibit 1 show that the payoff was $692,288.70.  [Id.,
27  KOLI-RESTITUTION-26, 28.]  Although the difference is not significant, because the burden is on
    the Government to show restitution amount, 18 U.S.C. § 3664(e), the Court adopts the higher payoff
28  amount as the Government has not adequately shown that it was the lower amount.  In fact, the
    Government's chart summarizing the losses to the secondary purchasers reflects the higher payoff
    amount.  [Doc. No. 101-1, Govt.'s Opp. at 5.]

Defendant shall be jointly and severally liable to pay restitution with co-defendants/co-conspirators for the same losses.  The presently known co-defendant/co-conspirator is Kian Ashkanizadeh, Cr. No. 12-0403-IEG (S.D. Cal.).

Until restitution has been paid, Defendant shall notify the Clerk of the Court and the United States Attorney's Office of any change in Defendant's mailing or residence address, no later than thirty (30) days after the change occurs.

**IT IS SO ORDERED.**

**DATED:**  April 5, 2013

**IRMA E. GONZALEZ**
**United States District Judge**

12cr403